UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80940-ROSENBERG/REINHART

ROBERT FREEDMAN, individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.

MAGICJACK VOCALTEC LTD., an Israeli
corporation; DON C. BELL III; GERALD
VENTO; DONALD A. BURNS; RICHARD
HARRIS; YUEN WAH SING; ALAN HOWE;
IZHAK GROSS; and TALI YARON-ELDAR,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION
## TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Second Amended Complaint at docket entry 60. The Motion has been fully briefed. *See* DE 60, 62, and 63. The Court does not find a need for oral argument, and thus Plaintiff's request for a hearing is denied. For the reasons set forth below, the Motion is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

    **I.**    **BACKGROUND**

Plaintiff Robert Freedman ("Plaintiff") brought this action on August 11, 2017 by filing a Class Action Complaint, DE 1, against magicJack Vocaltec Ltd. ("magicJack" or the "Company"), YMax Corporation ("YMax"), Don C. Bell III ("Bell"), Gerald Vento, Donald A. Burns, Richard Harris, Yuen Wah Sing, Alan Howe, Izhak Gross, Tali Yaron-Eldar and Yoseph Dauber ("Dauber"). On January 2, 2018, Plaintiff voluntarily dismissed all claims against

1

Dauber, DE 36, and filed an amended complaint, DE 37. On April 19, 2018, the remaining defendants moved to dismiss the amended complaint. DE 38.  By Order dated August 9, 2018; DE 57; this Court dismissed the amended complaint without prejudice, and permitted Plaintiff "one more opportunity to amend." DE 57, 3.  Plaintiff subsequently filed his Second Amended Complaint (the "Complaint"), DE 59, against all remaining defendants except for YMax (collectively, "Defendants").

Plaintiff brings this action on behalf of himself and a putative class of "all holders of magicJack Vocaltec Ltd. common stock who were or will be harmed by Defendants' actions as described" in the Complaint, which refers to a class of shareholders who received proxy statements in connection with shareholder votes in the spring of 2017. DE 59, ¶ 56.  Plaintiff also defines the putative class as "all purchasers of the common stock of magicJack during the Class Period. . . ." *Id.* ¶ 67. The Complaint contains two counts: one against all Defendants, for violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 14a–9, and the other against the individual Defendants for control-person liability under Section 20(a) of the Exchange Act.

Defendant magicJack is a publicly-traded company organized under the laws of Israel, with its principal place of business in Florida. DE 59 ¶¶ 9-10; DE 61-12 at 9, 21. The remaining defendants (the "Individual Defendants") are current or former directors of magicJack. *Id.* ¶¶ 11–19.

## II.     THE ALLEGATIONS IN THE COMPLAINT

The Complaint alleges that Defendants made material misrepresentations, or omitted material facts, in two proxy statements regarding the valuation and financial prospects of a company known as Broadsmart, which magicJack acquired in March 2016 for $40 million. DE

59, ¶¶ 2, 23.

On March 15, 2017, magicJack issued a proxy statement to solicit votes for the election of directors at the upcoming April 19, 2017 shareholder meeting (the "March 15 Proxy"). DE 61-1. Plaintiff focuses on the following statement in the March 15 Proxy:

> Your Board and Management are excited about the possibilities for restoring growth at magicJack under Mr. Bell's leadership. The seeds of change that we planted to evolve the business have already taken root and magicJack is well-positioned to harvest the fruits of its labor. The opportunity for meaningful future value creation is reflected in our growing Broadsmart pipeline, which currently includes large enterprise opportunities. This includes active pilots with two large North American businesses with thousands of locations, both of which would contribute significant monthly recurring revenues.

*Id.* ¶ 35.[1] Plaintiff alleges that this statement was misleading because of the diminished value of Broadsmart. Plaintiff claims that the statements in the March 15 Proxy were designed to "entrench" the magicJack directors in office and that "[o]n April 19, 2017, The [sic] Individual Defendants were elected to the magicJack board" as a result of the deception. *See id.* ¶ 36. However, Plaintiff does not seek to remove these directors or set aside the election the directors resulting from the March 15 Proxy.

On May 10, 2017, magicJack filed its Form 10-Q for the first quarter of 2017. DE 61-5. Plaintiff alleges that the full extent of Broadsmart's financial troubles was revealed in this SEC filing, sending magicJack's shares "spiraling downward." DE 59, ¶ 40; *see also id.* ¶¶ 33–34. In the May 2017 10-Q, magicJack disclosed that the new Chief Operating Officer for Broadsmart (hired in February) and magicJack's new management team (hired in March) "recently completed a comprehensive review of the Enterprise segment's business prospects and through

---

[1] This language does not appear in the March 15 Proxy itself, but rather in magicJack's Additional Proxy Soliciting Materials, also issued on March 15, 2017 ("March 15 Supplement") but not cited in the Complaint. Defendants have filed a copy of the March 15 Supplement. *See* DE 61-4.

3

this process revised the projections for its operating results downward." DE 61-5 at 19. The disclosure announced further that "Broadsmart received notification in early April that a major customer would not be renewing its contract," and that "management anticipates the loss of another one of the Enterprise's significant customers." *Id.* Together, the non-renewing customer and the customer anticipated to be lost comprised 29 percent of the Enterprise segment's (*i.e.*, Broadsmart's) 2016 revenues. *Id*; DE 59, ¶ 34. The discovery of these losses, together with the revised Broadsmart projections, prompted magicJack to conduct a valuation test for impairment of Broadsmart's long-lived assets and indefinite-lived intangible assets, including goodwill, as of March 31, 2017. DE 61-5 at 19; DE 59, ¶ 34. The Company reported the results of the impairment testing in its next periodic financial report filed with the SEC, the May 2017 10-Q: "In total, impairment losses of $31.5 million were recognized in operating expenses of the Enterprise segment for the three months ended March 31, 2017" (the "Broadsmart Impairment"). *Id*.

Following the April meeting at which magicJack's directors were elected, magicJack issued another proxy solicitation on June 23, 2017 (the "June 23 Proxy") in connection with a July 31, 2017 shareholder meeting. DE 61-7. The July 31 meeting was a special meeting of shareholders to vote on approval of an employment agreement with the new CEO and to approve changes to magicJack's stock incentive plans, compensation policy, and the compensation paid to its outside directors. DE 59, ¶ 48; DE 61-7; DE 61-8. The proposed compensation package for magicJack's new CEO, Bell, included financial incentives and severance pay provisions tied to the completion of a change-in-control transaction (*i.e.*, a sale of magicJack). DE 59, ¶ 51.

On November 9, 2017, magicJack entered into an agreement under which the Company would be sold to B. Riley & Co. ("B. Riley") for a price of $8.71 per share (the "B. Riley

Transaction"). DE 61-11 at 2-3. On February 8, 2018, magicJack issued a proxy statement in connection with a shareholder meeting to be held on March 19, 2018 for the purpose of voting on whether to approve the B. Riley Transaction; DE 61-11. The transaction was approved by shareholders. DE 61-12 at 2.

Plaintiff seeks damages to redress an injury suffered relating to the $8.71 per share price, which Plaintiff argues is less than an earlier non-binding, pre-due diligence offer for the Company. DE 59, 29; DE 61-11 at 22-24. However, Plaintiff does not allege that the proxy statement regarding the B. Riley Transaction contained any misleading statements or omissions, and does not challenge that proxy statement in the Complaint in any way.

### III. PLAINTIFF'S CLAIMS ARE DERIVATIVE IN NATURE, AND MUST BE DISMISSED FOR FAILING TO PLEAD THAT A DEMAND WAS MADE ON DEFENDANT MAGICJACK

Defendants argue that Plaintiff's claims are derivative in nature and that the claims should be dismissed for failure to allege a demand made upon the defendant corporation. The Court agrees.

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 23.1 ("Derivative Actions"), a shareholder proceeding in a derivative action, as opposed to a direct action against a corporation must first make a demand on the corporation:

> The complaint must be verified and must: . . .
> (3) state with particularity:
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> (B) the reasons for not obtaining the action or not making the effort.

The determination of whether the action is derivative or direct, and therefore whether Rule 23.1 applies, is a question of state law: "State law determines whether a cause of action is

5

direct or derivative." *Hantz v. Belyew*, 194 F. App'x 897, 900 (11th Cir. 2006). "When 'determining whether a shareholder's claims are derivative of the corporation's claims for standing purposes,' the Court applies 'the law of the state of incorporation.'" *Carasquero v. Intrepid Global Imaging 3D, Inc.*, No. 3:08-cv-241-J-34JRK, 2010 WL 11507435, at *10 (M.D. Fla. Sept. 29, 2010) (quoting *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 92 (D.D.C. 2006)); *see also Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1302–03 (S.D. Fla. 2013) ("Whether a claim is direct or derivative is a matter of state law, and is determined from the body of the complaint rather than from the label employed by the parties.") (quotation omitted), *aff'd*, 587 F. App'x 575 (11th Cir. 2014).

Here, the Court must look to Israeli law to determine whether this action is a derivative or direct action, because magicJack is incorporated in Israel. *See Kammona*, 962 F. Supp. 2d at 1302–03. Defendants have submitted with their motion the English translations of two decisions from the courts of Israel, and Plaintiff has not disputed their authenticity or applicability. The District Court of Israel's decision in *Gersht v. Tshuva* is instructive. As the court explained:

> The damage caused in the present case, according to the statements in the motion, stems from misrepresentations and misleading statements that were made mainly by Respondent 3, as CEO of the Company.
>
> The Applicant claimed, as mentioned, that the investigation of the Securities Authority and the publication of its findings led to the collapse of the Company's value, to the drop in the value of the Company's shares and to the cumulative damage to the group of shareholders.
>
> This damage is common to all the Company's shareholders. There is no basis for the claim that there is a difference between the damage caused to some of the shareholders and damage caused to others. . . .
>
> In the end, any misrepresentation and false statements that led, after the situation became clear, to the decline in the value of the Company as described by the Applicant in the motion – constitutes damage caused to the Company and as a result of this, to all shareholders equally.

CA 523-11-11 *Gersht v. Tshuva* (2012) (Isr.); DE 61-13. Similarly, the Supreme Court of Israel has explained that as a "general rule of thumb,"

> when a shareholder sustains damage independent of the damage the company sustains, he has a personal claim independent of the damage the company sustained. However if the damage the shareholder sustained was due to the depreciation in value of the company and the value of its shares, and all the shareholders were damaged to the same degree, usually - the shareholder does not have grounds to a personal claim. This is secondary damage reflecting the company's damages.

CA 2967/95 *Magen & Keshet Ltd. v. Tempo Ltd.* (1997) (Isr.); DE 61-13.

This Israeli case law is consistent with Florida law, [2] which provides that an action may be brought directly rather than derivatively only if "(1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company *and* (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014) (emphasis in original). *See also Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879, 884–85 (Fla. 4th DCA 2015) ("After reviewing prior cases in our district, we agree with the Third District and adopt a two-prong test as follows: In order for shareholders to bring a direct action in their individual capacity, the shareholders must allege both a direct harm and a special injury.").

If the action is determined to be a derivative suit, then the plaintiffs must make a demand on the corporation, prior to asserting a derivative claim, under either Israeli or Florida law, as

---

[2] Where a foreign law may apply but is not fully settled or addressed, courts generally apply the law of the forum state. *See, e.g.*, *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004) ("[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice." (quoting Restatement (Second) of Conflicts of Laws § 136, cmt. h (1971))); *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 713 (S.D.N.Y. 2002) (courts presume foreign law resembles forum law if foreign law is unsettled).

7

well as the Federal Rules of Civil Procedure. *See, e.g.,* Israel Companies Law 5759-1999 § 194(b) ("If a person wishes to bring a derivative action, then he shall write to the company and demand that it exercise its rights fully by bringing action (in this Chapter: demand)."); Fla. Stat. § 607.07401(2) (2017) ("complaint in a proceeding brought in the right of a corporation must … allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored" by the board of directors); Fed. R. Civ. Pro 23.1.

B. Procedural History of this Issue

Here, the Court raised its concerns about whether this action was derivative in nature in its August 9, 2018 Order, DE 57, which required Plaintiff to amend. "Plaintiff contends that he is bringing an individual claim, but this is an issue that warrants amendment. If it is Plaintiff's intent to pursue an individual claim, Plaintiff's Complaint should make it clear that the alleged injuries in this case flowed to Plaintiff and not to the Defendant corporation." DE 57, 2.

Plaintiff then filed his Second Amended Complaint at DE 59.

In Defendants' Motion to Dismiss, Defendants again raise the issue of whether this action is a derivative suit. Defendants argue in their Motion that the lawsuit is derivative, based on either Israeli or Florida law, and that accordingly, Plaintiff was required to plead that he had made a demand on magicJack before proceeding to litigation.

Plaintiff does not address the persuasive authority set forth by Defendants or adequately explain how his allegations satisfy the foregoing standards. Instead, he insists that he is asserting his personal right to exercise an informed vote and that this is a direct claim, regardless of the relief sought. DE 62 at 4–5. However, as stated above, "[w]hether a claim is direct or derivative is a matter of state law, and is determined from the body of the complaint rather than from the label employed by the parties." *Kammona*, 962 F. Supp. 2d at 1302–03 (quotation omitted).

C. Application

As the Supreme Court observed, "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder." *J.I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964) (abrogated on other grounds). Indeed, even where a plaintiff seeks direct relief in the form of voiding a shareholder vote—relief that Plaintiff does not seek—the claim should be dismissed as derivative where such relief is conflated with derivative relief. *See Calamore v. Juniper Networks, Inc.,* 364 F. App'x 370, 372 (9th Cir. 2010) (applying Delaware law). Thus, the nature of the relief sought informs the determination of whether the claim is direct or derivative, and requested relief that would inure to the company's benefit renders the claim derivative.

The derivative nature of Plaintiff's claims is readily apparent here. Plaintiff alleges that the Individual Defendants issued the allegedly misleading proxy statements in order to "entrench" and "enrich" themselves by obtaining "unwarranted personal compensation." DE 59, ¶¶ 48, 52. Two of the three forms of substantive relief requested by Plaintiff target such compensation. Plaintiff asks the Court to enjoin any payments "caused by or related to the two defective proxy statements" and to rescind payments made to the Individual Defendants in the event that magicJack is sold. *Id.* at 29.

Any harm to any shareholder caused by such allegedly excessive compensation would "flow subsequently from an initial harm to" magicJack, the payor of the compensation. *Dinuro*, 141 So. 3d at 739. Plaintiff suffers no special injury here; all shareholders suffer the same injury. Similarly, the relief that Plaintiff seeks—the recoupment of allegedly excessive compensation—would inure to magicJack. For this reason, claims relating to excessive compensation and

9

corporate waste routinely are found to be derivative in nature. *See, e.g.*, *Lehman v. Eldridge*, No. 11–23973–CIV–GRAHAM/GOODMAN, 2012 WL 12844560, at *4 (S.D. Fla. Jan. 27, 2012); *Orlinsky v. Patraka*, 971 So. 2d 796, 801–02 (Fla. 3d DCA 2007); *Karten v. Woltin*, 23 So. 3d 839, 841 (Fla. 4th DCA 2009). *See also Edwards v. Deloitte & Touche, LLP*, No. 16-21221-Civ-Scola, 2017 WL 1291994, at *6 (S.D. Fla. Jan. 18, 2017) (under Delaware law, breach claim for waste is "classically derivative" (citing *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771 (Del. 2006))). To the extent it seeks such relief, the Complaint asserts derivative claims.

Plaintiff also seeks damages measured by the difference between an alleged prior $9.50 offer to purchase magicJack and the $8.71 offer that Defendants ultimately accepted. This request for relief does not seek damages relating to a special injury suffered by Plaintiff, as required under the applicable law. This relief would be the same for all shareholders. Accordingly, to the extent it seeks this relief, too, the Complaint asserts derivative claims.

Finally, it is also undisputed that Plaintiff has made no demand on magicJack, as required by Israeli law, Florida law, and the Federal Rules of Civil Procedure. Thus, because the Complaint is derivative in nature, the Complaint must be dismissed because it contains no allegation that demand was made or that demand would be futile. *Kammona*, 962 F. Supp. 2d at 1303 (in failing to make a demand upon defendant corporation, plaintiff had failed to properly plead his derivative lawsuit, so the claim was dismissal); *see also McDowell v. Bracken*, 317 F. Supp. 3d 1162, 1171 (2018) (plaintiff's failure to make demand or demonstrate demand futility required dismissal of derivative suit).

Because the Court finds that this is a derivative action, and that Plaintiff has failed to plead that a demand was made upon magicJack, the Court grants the Motion to Dismiss on this ground, without reaching Defendants' alternative arguments.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a)

In Count II of the Complaint, Plaintiff purports to state a claim under Section 20(a) of the Exchange Act for control-person liability against each Individual Defendant. However, "[a] plaintiff cannot adequately plead violations of Section 20(a) without adequately pleading the primary violations." *Thorpe v. Walter Inv. Mgmt., Corp.*, No.: 1:14–cv–20880–UU, 2014 WL 11961964, at *21 (S.D. Fla. Dec. 23, 2014) (citing *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)). Plaintiff's failure to adequately plead a violation of Section 14(a) mandates dismissal of his Section 20(a) claims as well.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [DE 60] is GRANTED. The Second Amended Complaint as pled as an individual action is DISMISSED WITH PREJUDICE.

In its August 2018 Order, DE 57, this Court provided Plaintiff with a clear directive, after the Plaintiff already had amended his complaint once on January 2, 2018, DE 37, that he would need to allege direct injuries to proceed with an individual action, given that he failed to allege that he made a demand on the corporation. Plaintiff was specifically instructed by the Court to amend the Complaint in a manner that would "make it clear that the alleged injuries in this case flowed to Plaintiff and not the Defendant corporation." DE 57, 3. Plaintiff's failure to follow those instructions and cure the pleading deficiencies warrants the Court's dismissal of the Second Amended Complaint without further leave to amend. *See Barber v. FBI*, 2016 WL 4041048, at *1 (M.D. Fla. July 27, 2016) (dismissing complaint with prejudice where "Plaintiff has made no meaningful attempt to follow the Court's directives with respect to his pleading deficiencies."); *Farnsworth v. HCA, Inc.*, 2015 WL 5234640, at *8 (M.D. Fla. Sept. 8, 2015)

(dismissing complaint with prejudice where plaintiff failed to follow "the Court's clear guidance" in amending complaint). Furthermore, the case has been pending since August 11, 2017, thus providing Plaintiff with ample opportunity to sufficiently allege a cause of action against the Defendants. As Plaintiff has not attempted to plead a corporate derivative claim, but rather has persisted in his efforts to allege an individual claim, this dismissal does not address Plaintiff's ability to bring a derivative action.

Accordingly, it is hereby **ORDERED AND ADJUDGED**

1. The request for oral argument is **DENIED**.

2. The Motion to Dismiss [DE 60] is **GRANTED** as more fully specified in this order.

3. The Second Amended Complaint is **DISMISSED WITH PREJUDICE.**

4. The Clerk is ordered to **CLOSE** the case.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida this 21st day of November, 2018.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record